UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW WILDMAN, on his behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COOKUNITY, INC.,<br><br>Defendant. | Case No. ______________<br><br>King County Superior Court Case No. 26-2-1558-7 SEA<br><br>**NOTICE OF REMOVAL** |

**TO: THE CLERK AND HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

PLEASE TAKE NOTICE that Defendant CookUnity Inc., by and through its counsel, Cozen O'Connor, hereby removes this action from the King County Superior Court (Case No. 26-2-1558-7 SEA) ("State Court Action") to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. §§ 1332(d)(2) and (d), 1453, 1441, 1446. CookUnity hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). CookUnity is filing a copy of this notice with the King County Superior Court.

## I. VENUE AND JURISDICTION

1. Venue is proper in this Court under 28 U.S.C. §§ 128, 1332(d)(2), and 1446 because the Superior Court of the State of Washington for King County, where the Complaint was filed, is a state court within the Western District of Washington.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

2. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, and 1453. This Court specifically has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. §§ 1332(d)(2) and 1453(b), because it is a civil action styled as a class action in which: (1) the number of members of the proposed plaintiff class is not less than one hundred, in the aggregate; (2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (3) any member of the class of plaintiffs is a citizen of a State from any defendant. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B) and (d)(6).

## II. PROCEDURAL POSTURE

3. On May 11, 2026, Plaintiff Matthew Wildman commenced this matter by filing a Complaint in King County Superior Court. *See* Ex. 1 ("Compl.").

4. Plaintiff alleges that Defendant CookUnity, Inc., marketing emails violate Washington's Commercial Electronic Mail Act (CEMA), RCW 19.190 et seq., by creating a misleading sense of urgency. Compl. at ¶1-7.

5. Plaintiff claims that by implying that by "enticing [consumers] to engage with [CookUnity's] marketing efforts for fear of missing out" Defendant "falsely narrows the field – steering consumers away from shopping for better deals – to its own products that must be purchased *now*." *Id*., at 5-6.

6. As a result of CookUnity's actions, Plaintiff alleges that he and the class have been damaged in amounts to be proven at trial. *See* Compl.

7. Plaintiff purports to bring his claims on behalf of himself and similarly situated recipients of CookUnity's marketing emails as follows:

> All Washington residents who, during the Class Period, received a commercial email sent by the Defendant, on behalf of the Defendant, or with the Defendant's assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion.

Compl. ¶118.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

8. On May 11, 2026, Plaintiff filed a Summons. *See* Ex. 4.

9. On May 13, 2026, CookUnity, Inc., was served with service of process through their respective registered agent, CT Corporation System. *See* Ex. 7. This Notice of Removal is thus timely pursuant to 28 U.S.C. § 1446(b)(1), which states removal shall be filed within thirty days of *service* of the initial pleading and/or summons.

10. The following pleadings, as are available in the file of the State Court Action, encompass all of the pleadings received by or filed in this action as reflected on the Court's docket, as of June 12, 2026:

- Class Action Complaint;
- Case Schedule;
- Case Info Cover Sheet;
- Summons;
- Plaintiff's Jury Demand;
- Case Assignment Area Designation;
- Affidavit of Service; and
- Notice of Appearance.

*See* Exs. 1-8.

11. In accordance with the requirements of 28 U.S.C. § 1446(a), attached hereto collectively as Exhibits 1-8, are true and correct copies of all pleadings that Defendant obtained from the King County Superior Court.

12. Service of this Notice of Removal is being made on all adverse parties as shown by the attached Certificate of Service as required by 28 U.S.C. § 1446(d).

13. This is a civil putative class action commenced by Plaintiff, a resident and citizen of King County, Washington, as indicated in the Complaint. Ex. 1 at ¶ 9.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

14. CookUnity's principal place of business is located at 630 Flushing Ave, 3rd Floor, Brooklyn, NY 11206. *See* Declaration of Armen Moskvitin at ¶ 1-2. CookUnity Inc. is incorporated under the laws of Delaware. *Id.*

15. Plaintiff does not plead a specific amount of damages or an amount in controversy. Nonetheless, Plaintiff seeks:

a. Actual or liquidated damages;

b. Statutory damages, including treble damages, under the CPA;

c. Declaratory relief enjoining unspecified future conduct from Defendant;

f. Attorneys' fees and costs; and

g. Such other relief as the Court finds appropriate.

Ex. 1 at Prayer for Relief (pg. 23).

16. Removal of this action to the United States District Court is proper pursuant to 28 U.S.C. §§ 1332(d), 1453(b) because there is minimal diversity of citizenship between, on the one side, Plaintiff (a resident of Washington) and, on the other side, Defendant. Compl. ¶ 9; Declaration of Armen Moskvitin at ¶ 2. The United States District Court would, therefore, have had original jurisdiction of this matter pursuant to 28 U.S.C. § 1332(d) had the action been brought in federal court originally.

17. Promptly after filing this Notice of Removal, and as required by 28 U.S.C. § 1446(d), Defendant will serve on Plaintiff and file with King County Superior Court a "Notice of Filing Notice of Removal" in the form attached hereto as Exhibit 9 that will include a copy of this Notice of Removal as an Exhibit thereto.

18. Defendant denies any and all alleged wrongdoing and liability asserted by Plaintiff. By filing this Notice of Removal, CookUnity does not waive any defenses that may be available to it. CookUnity will file a responsive pleading within the time set forth in Rule 81(c) of the Federal Rules of Civil Procedure, or as agreed to with Plaintiff's counsel.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

## III. GROUNDS FOR REMOVAL

### A. Liberal Standard for Removal

25. In *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S. Ct. 547 (2014), the United States Supreme Court clarified the standards applicable to notices of removal, confirming a liberal standard in favor of removing defendants. Specifically, the Supreme Court found that the similarity of language between the removal statute, 28 U.S.C. § 1446, and Rule 8(a) can only mean that the same liberal pleading standards applied to complaints must also apply to notices of removal. *Id.* The Supreme Court also held in *Dart* that a removing defendant is not required to include evidence with its pleading in order to establish that the elements of federal subject matter jurisdiction are met. *Id.* at 552-553. Only if the Court or another party challenges jurisdiction should the Court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met – the Court noted "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidence establishing the amount is only required where the amount is contested by the plaintiff or in question with the court. *Id.* at 554.

Further, there exists no "presumption against removal" in CAFA cases, because CAFA was specifically enacted by Congress "to facilitate adjudication of certain class actions in federal court." *Id.*

### B. Plaintiff Asserts a Class Action Against Defendants, and CAFA Applies

26. Plaintiff plainly brings this lawsuit as a class action. The Complaint itself is titled "CLASS ACTION COMPLAINT," and Plaintiff states "Plaintiff files this lawsuit on behalf of himself and others similarly situated [.]" Compl. at P.1. In Plaintiff's Prayer for Relief, he asks the Court to "Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;" *See* Compl. ¶ A P. 23. Accordingly, CAFA applies. 28 U.S.C. § 1332(d)(2) states as follows:



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which - -
>
> (A) Any member of a class of plaintiffs is a citizen of a Sate different from any defendant;
>
> (B) Any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>
> (C) Any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or citizen of a foreign state.

## C. <u>Minimal Diversity Exists</u>

27. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). Minimal diversity of citizenship exists here because proposed class representative Plaintiff Matthew Wildman and Defendant are citizens of different states.

28. Plaintiff has conceded in the Complaint that he is a citizen of Washington. Compl. ¶ 10. Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

29. Conversely, CookUnity is not a citizen of Washington. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the state it has its principal place of business and the State under whose laws it was organized." 28 U.S.C. § 1332(d)(10). Courts have determined that an LLC is a citizen of the states in which its principal place of business is located and its state of incorporation. *Jack v. Ring* LLC, 553 F.Supp.3d 711 (N.D. Cal. 2021). The principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities." *See Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93 (2010).

30. CookUnity is organized under the laws of the state of Delaware and its principal place of business is in New York, where its corporate offices and headquarters are, and where its executive and administrative functions are located. *See* Declaration of Armen Moskvitin at



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

¶1-2. This diversity satisfies the minimal diversity requirements for removal of a class action. 28 U.S.C. § 1332(d)(10).

**D. <u>The Amount in Controversy Exceeds $5 Million</u>**

31. A proponent of removal bears the burden of establishing the jurisdictional requirements are satisfied. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682-86 (9th Cir. 2006). However, in its notice of removal, a defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014). "The amount in controversy considers the amount in dispute, not the amount that a plaintiff is likely to recover." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir .2010). Although a defendant cannot establish removal jurisdiction by mere speculation and conjecture with unreasonable assumptions, "when a removing defendant makes specific factual allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations[,] [t]hat kind of reasoning is not akin to conjecture, speculation, or star gazing." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). In assessing the amount in controversy, courts must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp.2d 993, 1001 (C.D. Cal. 2002). Additionally, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint") (citations omitted).

32. Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages,



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14 at 42. In addition, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14 at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case … **Section 1332(d) should be read broadly, with a strong preference that interstate class actions should be heard in federal court if removed by the defendant**." (emphasis added)).

33. Plaintiff here seeks to certify a class of anyone who has received a marketing email from CookUnity. Specifically, Plaintiff seeks certification of "All Washington residents who, during the Class Period, received a commercial email sent by the Defendant, on behalf of the Defendant, or with the Defendant's assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion." Compl. ¶118. Based on these allegations, the amount in controversy exceeds $5,000,000.

34. Information provided within this Notice is provided solely for purposes of removal. CookUnity does not waive and reserves all rights regarding the provided data, including to the extent it may or may not implicate work product, attorney-client privilege, and/or other protections regarding confidential and/or highly-sensitive business and/or personal information. CookUnity reserves all rights regarding discovery, that the class should not be certified, and/or the seeking of pertinent confidentiality and/or protective orders.

35. It is CookUnity's good faith belief that the amount in controversy exceeds $5,000,000. CookUnity transmitted marketing emails to over 10,000 Washington based email addresses during the alleged class period, from May 11, 2022 to present. Declaration of Armen Moskvitin at ¶ 3-4. Based on the relief to which Plaintiff complains the class members are



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

entitled, a minimum of $500 per violation, trebled and the amount in controversy clearly exceeds $5,000,000. Compl. ¶145.

**E. <u>Attorneys' Fees</u>**

36. Attorneys' fees are also includable in the amount in controversy where the underlying statute authorizes an award of fees. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 133 S.Ct. 1345, 185 L.Ed.2d (2013). Plaintiff asserts a cause of action under the Washington Consumer Protection Act, which states that "a person who is injured by a violation of this chapter may bring an action for recovery of actual damages, including court costs and attorneys' fees." RCW 19.138.280. The Ninth Circuit has recognized 25% as an appropriate benchmark for fee awards in class action cases. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The above information regarding the number of Washington users reached already demonstrates that the amount in controversy threshold is met. Adding attorneys' fees benchmark only serves to underscore the conclusion that this case easily exceeds the $5,000,000 CAFA threshold.

**F. <u>The Class Size Exceeds 100 Members</u>**

37. Plaintiff seeks to represent a class of All Washington residents who, during the Class Period, received a commercial email sent by the Defendant, on behalf of the Defendant, or with the Defendant's assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion. Compl. ¶118. Based on the above information regarding the number of users reached, the proposed class would exceed 100. Declaration of Armen Moskvitin at ¶ 3-4.

38. Plaintiff's Complaint does not allege a specific number of persons who meet his proposed class definition, Compl. ¶118. Thus, as the putative class is defined in the Complaint, it exceeds 100.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

**G. No Exception to CAFA Jurisdiction Applies**

39. No exception to CAFA jurisdiction applies to this matter.

DATED this 12th day of June, 2026.

COZEN O'CONNOR

By: */s/ William H. Walsh*
William H. Walsh, WSBA #21911
Patrick Clifford, WSBA #56848
999 Third Avenue Suite 1900
Seattle, WA 98104
Telephone: (206) 340-1000
Email: wwalsh@cozen.com

By: */s/ Patrick Clifford*
Patrick Clifford, WSBA #56848
999 Third Avenue Suite 1900
Seattle, WA 98104
Telephone: (206) 340-1000
Email: pclifford@cozen.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I electronically filed the foregoing document and any attachments with the Clerk of the Court using the CM/ECF system and also caused the following individual(s) to be served in the manner indicated below:

Samuel J. Strauss, WSBA #46971
Raina C. Borrelli (*pro hac vice* forthcoming)
Strauss Borrelli PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

☐ Via Messenger
☐ Via Fax
☐ Via U.S. Mail
☒ Via ECF Notification
☒ Via E-mail
☐ Via Overnight Delivery

Lynn A. Toops (*pro hac vice* forthcoming)
Natalie A. Lyons (*pro hac vice* forthcoming)
Ian R. Bensberg (*pro hac vice* forthcoming)
Cohenmalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV (*pro hac vice* forthcoming)
Michael C. Tackeff (*pro hac vice* forthcoming)
Andrew K. Murray (*pro hac vice* forthcoming)
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff and the Putative Class*

DATED this June 12, 2026

COZEN O'CONNOR

By: /s/ William H. Walsh
William H. Walsh, 21911
E-mail: wwalsh@cozen.com

# EXHIBIT 1

FILED
2026 MAY 11 03:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| MATTHEW WILDMAN, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COOKUNITY, INC.,<br><br>Defendant. | Case No.: ____________ SEA<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Matthew Wildman, on his own behalf and on behalf of others similarly situated, on information and belief except to his own experiences and matters of public record, complains of CookUnity, Inc. ("Defendant" or "CookUnity"), as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

19.190.020(1)(b).

3. Defendant CookUnity engages in the precise activity which CEMA prohibits.

4. CookUnity spams Washington consumers, including Plaintiff, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6. Through this deceptive time-sensitivity, CookUnity falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges CookUnity's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in King County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in King County.

## III. PARTIES

10. Plaintiff Matthew Wildman is a resident of King County, Washington.

11. Defendant CookUnity, Inc., is a Delaware corporation with its principal address at 630 Flushing Ave., 3rd Floor, Brooklyn, NY 11206, and a registered agent in the State of



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Washington at Corporation Service Company, 300 Deschutes Way SW, Suite 208 MC-CSC1, Tumwater, WA, 98501.

12. Defendant sells its products in Washington through its website and is thus subject to the personal jurisdiction in this Court. *See, e.g.*, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

13. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

14. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

15. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

16. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

17. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

18. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

19. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

20. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

21. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

22. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

23. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

24. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

25. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

26. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

27. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

28. CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

29. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of CookUnity's marketing emails make false time scarcity claims.**

30. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

31. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

para. 30, at 22.

32. "False or misleading scarcity claims can change the behavior of consumers." *Online Choice Architecture*, *supra* para.30, at 27.

33. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

34. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 30, at 26.

35. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

36. Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

37. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit.*

38. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

39. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

to credibly communicate this information." *Id.*

40. These false time scarcity claims are a staple of the defendant's marketing scheme to compel consumers to purchase its products.

41. CookUnity offers consumers a meal delivery subscription service. Consumers may subscribe to a plan with CookUnity through its website, www.cookunity.com.

42. To advertise its products and encourage purchases, CookUnity routinely sends spam emails to consumers. These emails are part of a calculated marketing strategy that Defendant orchestrates in advance to maximize sales by distorting factual information about the duration and availability of its promotions.

43. **Urgent Spam Emails.** Unfortunately for those recipients, CookUnity regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

44. CookUnity has tailored its approach to fit a variety of offers. In these examples, CookUnity uses the subject lines of its marketing emails to present a promotion, sale, discount, or other offer as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase from CookUnity's website. However, the timing and duration claims made in CookUnity's email subject lines communicate false and misleading information to consumers. Once the originally advertised "deadline" has passed, CookUnity knowingly revives the same offer shortly thereafter.

45. This misleading marketing strategy allows CookUnity to maximize sales during both the initial promotion, as well as the subsequent promotion. CookUnity's use of false time scarcity claims compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions. A 2023 "Today Only" discount promotion



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

provides an apt example of this strategy at work.

46. On January 18, 2023, it transmitted an email with the subject line: "Today Only: 50% OFF your first week!" The body of the email repeated the "Today Only" warning and specified that the offer entailed "50% off your entire first week when you sign up[.]"

47. The very next day, CookUnity confirmed the falsity of the January 18 subject line.

48. On January 19, 2023, it transmitted an email titled: "Subscribe with 50% off your first week[.]" Inside, the email invited consumers to "Save 50% off on your first week of meals when you sign up for CookUnity."

49. CookUnity never intended to limit the 50% off offer to a single day, despite the unambiguous deadline it presented to consumers in its January 18, 2023, subject line. The "Today Only" warning was a misleading strategy meant to increase sales by presenting the 50% off discount as a scarce opportunity. Clearly, it was not.

50. CookUnity dished up more deception the following week.

51. On January 25, 2023, CookUnity sent an email with the subject heading: "Today Only: 50% OFF a week's worth of food 😁 [.]" Again, the body of the email encouraged recipients to "Get HALF OFF your first week of fantastic food."

52. Again, the "Today Only" claim in the January 25 subject line was demonstrably false.

53. The next day, January 26, 2023, CookUnity transmitted an email titled: "Get rewarded for eating well[.]" Inside, the email extended the same terms from the previous offer: "When you get started with CookUnity today, you'll save 50% on your first week of meals."

54. Despite the clear deadline articulated in the January 25, 2023, subject line, the opportunity did not conclude on January 25, as advertised. Instead of providing consumers with



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

accurate terms, Defendant chose to keep them in the dark regarding the promotion's end date and orchestrated a scheme to promulgate false information.

55. CookUnity served at least two more examples of its misleading marketing strategy in February 2023. In both instances, CookUnity presented the 50% off offer as a one-day opportunity, only to advertise the same discount, pursuant to the same terms, shortly thereafter. The email subject lines which CookUnity transmitted to advertise the offer demonstrate the company's deceptive pattern:

a. February 1, 2023: "Fall in love with 50% off TODAY ONLY [.]"

b. February 3, 2023: "50% off food that makes you feel something [.]"

c. February 22, 2023: "Upgrade date night with 50% off TODAY ONLY [.]"

d. February 26, 2023: "Good food, good life - 50% off [.]"

56. The subject lines transmitted on February 1 and February 22 falsely stated that the opportunity to obtain 50% off a weeks' worth of meals was limited to a one-day duration. Yet, as the February 3 and February 26 emails confirm, consumers could access the same offer at multiple times throughout the month of February.

57. Rather than put the scheme on ice, CookUnity deployed it again in the months to follow. In these examples, CookUnity warned consumers that the 50% off promotion was limited to a single day, only to advertise the same deal within a week's time, as demonstrated by the subject lines used to perpetuate the ruse:

a. March 1, 2023: "50% OFF your first week fantastic food for Today Only!"

b. March 3, 2023: "50% off food to escape the world or to discover it[.]"

c. March 8, 2023: "Empower yourself with 50% off TODAY ONLY [.]"



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

d. March 12, 2023: "Fueling the future with flavor and 50% off [.]"

e. March 15, 2023: "You're in luck with 50% off TODAY ONLY [.]"

f. March 17, 2023: "Half off a whole lotta plate-licking luck [.]"

g. March 22, 2023: "Spring for 50% Off Today Only [.]"

h. March 24, 2023: "Say goodbye to the cold with [] a hot 50% Off [.]"

i. March 27, 2023: "Have a plan of attack with 50% off TODAY ONLY [.]"

j. March 29, 2023: "TODAY ONLY! Half off, served in full [.]"

k. April 10, 2023: "TODAY ONLY! Half off your first week of your new favorite food [.]"

l. April 12, 2023: "50% off your first week of mind-blowing meals [.]"

58. The false deadlines for the "50% off" deal is simply one element of Defendant's cohesive marketing strategy meant to persuade consumers to act quickly and purchase its merchandise.

59. In an example from May 2023, CookUnity seasoned its scheme with a new twist.

60. On May 2, 2023, it transmitted an email with the subject line: "TODAY ONLY 60% off chef-prepared meals[.]" Text within the email specified that the 60% discount would apply for two weeks of food from the subscription service.

61. But much like the 50% offer advertised earlier in the year, the purported "TODAY ONLY" for "60% off" was a ruse.

62. The next day, May 3, CookUnity advertised the same 60% off deal as confirmed by an email titled: "How about a festive 60% off? [.]"

63. CookUnity repackaged its scheme in time for the Mother's Day holiday later that



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

month.

64. On May 11, 2023, it sent an email with the subject heading: "60% off TODAY ONLY for Mom[.]"

65. Despite clearly announcing that the 60% off discount was a one-day offering in the May 11, 2023, subject line, CookUnity proved its own lie the very next day.

66. On May 12, 2023, it sent consumers an email titled, "For Mother's Day, take 60% off 💌 [,]" confirming that the "TODAY ONLY" warning in the May 11 subject line was false.

67. In other examples from May 2023, CookUnity continued to misrepresent the availability of the 50% off discount, as these email subject lines demonstrate:

a. May 18, 2023: "Get 50% Off Today Only! Order now!"

b. May 19, 2023: "Don't miss out on 50% OFF[.]"

c. May 29, 2023: "TODAY ONLY: 50% off new & exciting food[.]"

d. May 31, 2023: "50% OFF for 2 weeks of flavorful food[.]"

68. In an example from later in the year, CookUnity paired a false deadline with a surprise extension to perpetuate its ruse during a Black Friday promotion.

69. On November 24, 2023, it sent consumers an email with the subject line: " ⚡ FINAL HOURS: Get 60% Off + 20% Off Your Next 3 Weeks! ⚡ [.]" The advertised promotion offered consumers 60% off the cost of their first weeks' meals, followed by 20% off the three subsequent weeks.

70. Unfortunately for consumers, however, the "FINAL HOURS" that CookUnity urgently invoked its November 24 subject line did not actually run out that day.

71. The following day, November 25, 2023, CookUnity sent an email with the subject heading: " 🚨 Black Friday Sale EXTENDED 🚨 [.]" The email confirmed that the "60% Off +



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

20% Off" offer was still available.

72. CookUnity recycled the promotion and the deception for its Cyber Monday Promotion.

73. On November 27, 2023, it sent an email titled: "60% Off Today Only: Amazing Cyber Monday deal on chef-made meals[.]" Again, recipients who accepted the offer would receive 60% off the cost of their first weeks' meals and 20% off during the three weeks to follow.

74. The next day, November 28, 2023, CookUnity sent an email advertising the same promotion in its subject line: "💥 Cyber Monday Extended! 60% off chef-made meals[.]" The email's preview text exclaimed, "⚠️ You can still get yesterday's discount today!" confirming that the November 27, 2023, subject line communicated a false deadline.

75. The following year, 2024, brought additional examples of CookUnity's misleading marketing scheme for its "60% Off + 20% Off" promotion. CookUnity claimed that the offer was coming to a quick end in its March 29, April 5, April 12, and April 27 subject lines. However, quickly thereafter, CookUnity returned to consumers' inboxes to advertise the very same deal. The email subject lines which CookUnity transmitted to advertise the offer demonstrate its deceptive pattern:

a. March 29, 2024: "🕐 Tick-tock... 60% OFF ENDS TODAY[.]"

b. April 1, 2024: "🧑‍🍳 Get 60% Off Ready-To-Eat Meals...[.]"

c. April 5, 2024: "🚨 Last Chance! Get 60% Off Restaurant Quality Meals!"

d. April 9, 2024: "📦 Convenience at Your Doorstep, Now 60% Off[.]"

e. April 12, 2024: "🚨 Last Chance! Get 60% Off Restaurant Quality Meals!"

f. April 15, 2024: "🍴 Unlock 60% Off Chef Crafted Meals Today!"



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

g. April 27, 2024: "Hurry! 60% off chef-crafted meals ends soon 🚀[.]"

h. April 29, 2024: "Craving Convenience, —? Get 60% OFF on chef-crafted meals 🔍[.]"

76. CookUnity altered its approach in an example from later in the year. Instead of extending or reviving a promotion once its advertised deadline had lapsed, CookUnity opted to offer a subsequent promotion with better terms.

77. On November 27, 2024, CookUnity sent an email with the subject line: "Your last chance for 60% Off Chef-Made meals!" According to terms within the email, the promotion offered 60% off recipients' first week of meals, then 10% off the cost of meals for the three weeks thereafter.

78. Two days later, on November 29, 2024, CookUnity transmitted an email with the subject heading: "🎁 BLACK FRIDAY BONUS - 60% Off 🎁[.]" Text within the email offered consumers 60% off the cost of their first week's meals and 20% off the cost of meals for weeks two through four.

79. Thus, CookUnity leveraged the false time scarcity claim in its November 27, 2024, subject line to pressure consumers to buy quickly—because the opportunity to obtain the advertised discounts was purportedly coming to an end—only to advertise better terms shortly thereafter. The misleading nature of these communications couldn't be clearer. Consumers in receipt of the November 27 email are urged to purchase a subscription on CookUnity's website quickly because, according to the subject line sent on that date, the special pricing is ending soon. However, within days, CookUnity advertised an offer with better terms.

80. By stuffing consumer inboxes with such misinformation, CookUnity ensures that email recipients lack the accurate details needed to make educated buying decisions.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

81. An additional example of CookUnity's deceptive practices occurred in the beginning of 2025.

82. On January 11, 2025, CookUnity transmitted an email with the subject line: "Last Call – 60% Off Flash Sale!" Inside, the email replicated the 60% off week 1 + 20% off weeks 2 through 4 offer. A banner at the top of the email featured large text urging consumers to: "ACT NOW: NEW YEAR SALE YOU CAN'T MISS!"

83. However, January 11 was not the last call for the offer.

84. On January 13, 2025, CookUnity sent another email titled: "60% off meals made to win weight goals!" Text within the email repeated the same terms contained in the January 11, 2025, email.

85. Unfortunately for consumers, CookUnity continued to deploy deceptive subject lines as the year went on.

86. For example, CookUnity advertised an Easter Sale in its April 22, 2025, email titled: "Hey, last call for the Easter sale!" Inside the email, CookUnity repeated the offer: "60% OFF 1 WEEK + 20% OFF THE NEXT THREE WEEKS[.]" The email's preview text warned consumers to, "Grab 4 weeks of savings while you still can."

87. It was not the "last call" for the advertised discount, however.

88. Days later, on April 25, 2025, CookUnity sent an email with the subject line: "Nothing tastes better than 60% off." Within the email, CookUnity advertised the same "60% OFF 1 WEEK + 20% OFF THE NEXT THREE WEEKS" offer.

89. Thus, the April 22, 2025 subject line falsely stated that the discount opportunity was coming to an end.

90. CookUnity repackaged the same offer yet again the following month as a Memorial



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Day Sale.

91. On May 26, 2025, it sent an email carrying the subject heading, "Last call for the Memorial Day Sale [,]" and offering the same "60% OFF + 20% OFF THE NEXT THREE WEEKS" discount inside.

92. An email sent on May 28, 2025, and titled, "Bold flavors, big deal[,]" confirmed that the exact same offer was still available. Large text within the email repeated the terms: "60% OFF + 20% OFF THE NEXT THREE WEEKS[.]"

93. Thus, May 26, 2025, was not the "last call" for the deal. CookUnity advertised the same discount a mere two days later.

94. CookUnity continued to transmit subject lines with false and misleading information in the second half of 2025. Several examples arose in the context of holiday-themed sales.

95. For instance, CookUnity sent an email promoting a Black Friday sale on November 28, 2025. The email subject heading stated, "Final hours: Your 60% OFF Black Friday deal ends soon[,]" while the body of the email specified the offer, "60% OFF + 20% OFF THE NEXT THREE WEEKS[.]"

96. Consistent with its typical pattern, however, November 28 did not constitute the "final hours" for the advertised discount.

97. On November 29, 2025, CookUnity transmitted an email with the subject line: "The Black Friday Sale is BACK ON! [.]" Inside the email, CookUnity stated that the Black Friday sale had been extended.

98. So, the November 28, 2025, subject line didn't convey accurate information upon which consumers could rely. Instead, CookUnity used it to deploy a false deadline for the Black



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Friday Sale.

99. CookUnity deployed the same trick for Cyber Monday, a few days later.

100. On December 1, 2025, CookUnity sent an email titled: "⚠ Last call for Cyber Monday ⚠ [.]" Inside the email, CookUnity advertised the same discount, "60% OFF + 20% OFF THE NEXT THREE WEEKS[,]" offered during its Black Friday Sale.

101. Later that day, CookUnity transmitted another email urging consumers to act. The email carried the subject heading: "Ends tonight: 60% off for Cyber Monday!" The email's preview text layered on additional time pressure, informing recipients that it was their "Last chance to let our chefs craft your holiday menu[.]"

102. Despite the clear deadline communicated in the December 1, 2025, subject lines, the promotion did not end on that date.

103. CookUnity confirmed that December 1 was a false deadline the following day. On December 2, 2025, it sent an email titled: "Hey, our 60% off Cyber deal is back ON!" Flashing text within the email proclaimed: "CYBER MONDAY EXTENDED[.]"

104. As these examples demonstrate, CookUnity is engaged in a scheme where it pressures consumers to purchase products from its website using subject lines which falsely represent the availability of its offers.

### C. CookUnity knows when it sends emails to Washington residents.

105. A sophisticated commercial enterprise, like CookUnity, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

106. First, the sheer volume of email marketing that CookUnity engages in put it on



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

notice that Washington residents would receive its emails. For instance, for the years 2025, CookUnity transmitted roughly 35 emails per month, 8 emails per week, and 1.16 emails per day.

107. Second, CookUnity may obtain location information tied to email addresses when consumers make purchases from CookUnity through digital platforms, or otherwise self-report such information to CookUnity.

108. Third, CookUnity may obtain location information tied to email addresses by tracking the IP addresses of devices used to open CookUnity emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

109. Specifically, CookUnity appears to use Braze to manage its email marketing campaigns. This platform should allow CookUnity to access a list of every email address that was sent a marketing email. It should also allow CookUnity to determine who viewed the emails and who clicked on any links within them.

110. Fourth, CookUnity may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

111. Fifth, CookUnity may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

112. Sixth, CookUnity may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

19.190.020(2).

113. It is thus highly probable that a seller of Defendant's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. CookUnity violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

114. CookUnity has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and harassment under CEMA.

115. For example, Plaintiff received the following emails from CookUnity:

a. An email sent on November 27, 2024, titled: "Your last chance for 60% Off Chef-Made meals!" This email contained a false or misleading subject line sent by CookUnity as described above at paragraphs 76 through 79.

b. An email sent on November 28, 2025, titled: "Final hours: Your 60% OFF Black Friday deal ends soon[.]" This email contained a false or misleading subject line sent by CookUnity as described above at paragraphs 94 through 98.

c. An email sent on December 1, 2025, titled: "⚠ Last call for Cyber Monday ⚠[.]" This email contained a false or misleading subject line sent by CookUnity as described above at paragraphs 100 through 103.

d. An email sent on December 1, 2025, titled: "Ends tonight: 60% off for Cyber Monday!" This email contained a false or misleading subject line sent by CookUnity as described above at paragraphs 100 through 103.

116. The subject lines of these emails are false or misleading in violation of CEMA.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

117. The subject line contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

118. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington residents who, during the Class Period, received a commercial email sent by the Defendant, on behalf of the Defendant, or with the Defendant's assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion.

119. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

120. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

121. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

122. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

123. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

124. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

125. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

126. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

127. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

128. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

129. Plaintiff incorporates and realleges paragraphs 1-117 above.

130. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

131. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

132. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

133. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

134. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

135. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**Second Claim to Relief**

**Violation of the Consumer Protection Act, RCW 19.86.020**

136. Plaintiff incorporates and realleges paragraphs 1–117 above.

137. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

138. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

139. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

140. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

141. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

142. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

143. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents. .



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

144. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

145. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

146. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date: May 11, 2026

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Counsel for Plaintiff and the Putative Class*

*** Applications for admission *pro hac vice* forthcoming**

# EXHIBIT 2

FILED
2026 MAY 11 03:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| | |
|---|---|
| MATTHEW WILDMAN<br><br>Plaintiff(s)<br>vs<br><br>COOKUNITY INC.<br><br>Defendant(s) | No. 26-2-15588-7 SEA<br><br>**ORDER SETTING CIVIL CASE SCHEDULE**<br><br>**ASSIGNED JUDGE: Michael K Ryan, Dept. 37**<br><br>FILED DATE: 05/11/2026<br>TRIAL DATE:05/17/2027 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:**
The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition*.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion. The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**You are required to give a copy of these documents to all parties in this case.**

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS:**
A statuary filing fee must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and crossclaims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a statutory arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a statutory fee must be paid and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
| | Case Filed and Schedule Issued. | 05/11/2026 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$250 arbitration fee must be paid** | 10/19/2026 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 10/19/2026 |
| | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 11/02/2026 |
| | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 12/14/2026 |
| | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 01/25/2027 |
| | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 02/08/2027 |
| | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 02/08/2027 |
| | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 03/29/2027 |
| | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 04/19/2027 |
| | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 04/26/2027 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 04/26/2027 |
| | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 05/03/2027 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 05/10/2027 |
| | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 05/10/2027 |
| | Trial Date [*See KCLCR 40*]. | 05/17/2027 |

*The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.*

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED: 05/11/2026

[signature]

PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:** Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

**A. Joint Confirmation regarding Trial Readiness Report**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial**
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

**MOTIONS PROCEDURES**

**A. Noting of Motions**

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:** Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time. However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule. In addition, discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B. Original Documents/Working Copies/ Filing of Documents: All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application. Pre-registration to accept e-service is required. E-Service generates a record of service document that can be e-filed. Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. **Do not file the original of the proposed order with the Clerk of the Court.** Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order. The court may distribute orders electronically. Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the Ex Parte and Probate Department.** Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the

assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

Averil Rothrock

PRESIDING JUDGE

# EXHIBIT 3

FILED
2026 MAY 11 03:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| | |
|---|---|
| WILDMAN<br><br>VS<br><br>COOKUNITY INC. | No. 26-2-15588-7 SEA<br><br>**CASE INFORMATION COVER SHEET AND AREA DESIGNATION**<br><br>(CICS) |

**CAUSE OF ACTION**

CPA - Consumer Protection Act

**AREA OF DESIGNATION**

SEA — Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

# EXHIBIT 4

FILED
2026 MAY 11 03:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| MATTHEW WILDMAN, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COOKUNITY, INC.,<br><br>Defendant. | Case No.: ____________________ SEA<br><br>SUMMONS |

**TO: KING COUNTY SUPERIOR COURT CLERK**
**AND TO: COOKUNITY, INC.**

A lawsuit has been started against you in the above-entitled court by Plaintiff Matthew Wildman, on his own behalf and on behalf of others similarly situated, by and through his attorney, Samuel J. Strauss of Strauss Borrelli PLLC. Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 20 days after the service of this Summons, or 60 days if you were personally served outside the state, excluding the day of service, or a default judgment may be entered against you without notice. A



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

default judgment is one where the plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date: May 11, 2026

Respectfully submitted,

/s/ *Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Counsel for Plaintiff and the Putative Class*

*** Applications for admission *pro hac vice* forthcoming**

## NOTICE RE:MILITARY SERVICE MEMBERS

**NOTICE**: State and federal law provide protections to defendants who are on active duty in the military service, and to their dependents. Dependents of a service member of the service member's spouse, the service member's minor child, or an individual for whom the service member provided more than on-half of the individual's support for one hundred eighty days immediately preceding an application for relief.

One protection provided is the protection against the entry of a default judgment in certain circumstances. **This notice only pertains to a defendant who is a dependent of a member of the national guard or a military reserve component under a call to active service for a period of time of more than thirty consecutive days.** Other defendants in military service also have protections against default judgments not covered by this notice. If you are the dependent of a member of the national guard or a military reserve component under a call to active service for a period of more than thirty consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status as such within twenty days of the receipt of this notice.

If you fail to do so, then a court or an administrative tribunal may presume that you are not a dependent of an active-duty member of the national guard or reserves, and proceed with the entry of an order of default and/or a default judgment without further proof of your status. Your response to the plaintiff or plaintiff's attorney(s) about your status does not constitute an appearance for jurisdictional purposes in any pending litigation nor a waiver of your rights.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

# EXHIBIT 5

FILED
2026 MAY 11 03:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| MATTHEW WILDMAN, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COOKUNITY, INC.,<br><br>Defendant. | Case No.: ____________________<br><br>JURY DEMAND |

Plaintiff Matthew Wildman, by and through his attorneys, individually and on behalf of all others similarly situated, hereby demands a trial by a twelve-person jury in the above-entitled action upon all issues.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date: May 11, 2026

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsmile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Counsel for Plaintiff and the Putative Class*

*** Applications for admission *pro hac vice* forthcoming**

# EXHIBIT 6

FILED
2026 MAY 11 03:46 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

**KING COUNTY SUPERIOR COURT**

**CASE ASSIGNMENT AREA DESIGNATION and CASE INFORMATION COVER SHEET (CICS)**

Pursuant to King County Code 4A.630.060, a faulty document fee of $15 may be assessed to new case filings missing this sheet.

**CASE NUMBER:** ____________________
(Provided by the Clerk)

**CASE CAPTION:** *Wildman v. CookUnity, Inc.*

(New case: Print name of person starting case **vs.** name of person or agency you are filing against.)

Please mark one of the boxes below:

☒ **Seattle Area**, defined as:

All of King County north of Interstate 90 and including all of the Interstate 90 right-of-way; all the cities of Seattle, Mercer Island, Bellevue, Issaquah and North Bend; and all of Vashon and Maury Islands.

☐ **Kent Area,** defined as:

All of King County south of Interstate 90 except those areas included in the Seattle Case Assignment Area.

I certify that this case meets the case assignment criteria, described in King County LCR 82(e).

| Signature of Attorney | WSBA #46971<br>WSBA Number | May 11, 2026<br>Date |
|---|---|---|

or

____________________ ____________
Signature of person who is starting case Date

____________________
Address, City, State, Zip Code of person who is starting case if not represented by attorney

# KING COUNTY SUPERIOR COURT
# CASE ASSIGNMENT AREA DESIGNATION and CASE INFORMATION COVER SHEET

## CIVIL

Please check the category that best describes this case.

**APPEAL/REVIEW**

☐ Administrative Law Review (ALR 2)

(Petition to the Superior Court for review of rulings made by state administrative agencies. Examples: DSHS Child Support, Good to Go passes, denial of benefits from Employment Security, DSHS)

☐ Board of Industrial Insurance Appeals – Workers Comp (ALRLI 2)*

(Petition to the Superior Court for review of rulings made by Labor & Industries.)

☐ DOL Revocation (DOL 2)*

(Appeal of a DOL revocation Implied consent-Test refusal ONLY.) RCW 46.20.308(9)

**CONTRACT/COMMERCIAL**

☐ Breach of Contract (COM 2)*

(Complaint involving money dispute where a breach of contract is involved.)

☐ Commercial Contract (COM 2)*

(Complaint involving money dispute where a contract is involved.)

☐ Commercial Non-Contract (COL 2)*

(Complaint involving money dispute where no contract is involved.)

☐ Third Party Collection (COL 2)*

(Complaint involving a third party over a money dispute where no contract is involved.)

**ELECTIONS**

☐ Non-Financial Enforcement (NFE2)

(Filed by the Prosecutors or an agency responding to a demand for documents, pursuant to RCW 71.09)

☐ Petition to Appeal/Amend Ballot Title (BAT 2)

(Action filed if any persons are dissatisfied with the ballot title for a local ballot measure pursuant to RCW 29A.36.)

☐ Recall Ballot Synopsis (RBS2)

(Filed by the Prosecutor or Attorney General pursuant to RCW 29A.56)

☐ Subdivision Election Process Review (SER 2)*

(Action filed by a political subdivision seeking acknowledgement of compliance pursuant to RCW 29A.92.)

☐ Voter Election Process Law Review (VEP 2)*

(Complaint for violation of voting rights act pursuant to RCW 29A.92.080 or 29A.92.090 )

**JUDGMENT**

☐ Abstract, Judgment, Another County (ABJ 2)

(A certified copy of a judgment docket from another Superior Court within the state.)

☐ Confession of Judgment (CFJ 2)*

(The entry of a judgment when a defendant admits liability and accepts the amount of agreed-upon damages but does not pay or perform as agreed upon.)

* The filing party will be given an appropriate case schedule at time of filing.
** Case schedule will be issued after hearing and findings.

☐ Foreign Judgment (from another State or Country) (FJU 2)

(Any judgment, decree, or order of a court of the United States, or of any state or territory, which is entitled to full faith and credit in this state.)

☐ Tax Warrant or Warrant (TAX 2)

(A notice of assessment by a state agency or self-insured company creating a judgment/lien in the county in which it is filed.)

☐ Transcript of Judgment (TRJ 2)

(A certified copy of a judgment from a court of limited jurisdiction (e.g. District or Municipal court) to a Superior Court.)

**PROPERTY RIGHTS**

☐ Condemnation/Eminent Domain (CON 2)*

(Complaint involving governmental taking of private property with payment, but not necessarily with consent.)

☐ Foreclosure (FOR 2)*

(Complaint involving termination of ownership rights when a mortgage or tax foreclosure is involved, where ownership is not in question.)

☐ Land Use Petition (LUP 2)*

(Petition for an expedited judicial review of a land use decision made by a local jurisdiction.) RCW 36.70C.040

☐ Non-Residential Unlawful Detainer (Eviction) (UND 2)
(Commercial property eviction.)

☐ Property Fairness Act (PFA 2)*

(Complaint involving the regulation of private property or restraint of land use by a government entity brought forth by Title 64.)

☐ Quiet Title (QTI 2)*

(Complaint involving the ownership, use, or disposition of land or real estate other than foreclosure.)

☐ Residential Unlawful Detainer (Eviction) (UND 2)

(Complaint involving the unjustifiable retention of lands or attachments to land, including water and mineral rights.)

**OTHER COMPLAINT/PETITION**

☐ Action to Compel/Confirm Private Binding Arbitration (CAA 2)
(Petition to force or confirm private binding arbitration.)

☐ Application for Health & Safety Inspection (HSI 2)

☐ Assurance of Discontinuance (AOD 2)

(Filed by Attorney General's Office to prevent businesses from engaging in improper or misleading practices.)

☐ Birth Certificate Change(PBC 2)

(Petition to amend birth certificate)

☐ Bond Justification (PBJ 2)

(Bail bond company desiring to transact surety bail bonds in King County facilities.)

☐ Certificate of Rehabilitation (CRR 2)

(Petition to restore civil and political rights.)

☐ Certificate of Restoration Opportunity(CRP 2)

(Establishes eligibility requirements for certain professional licenses.)

* The filing party will be given an appropriate case schedule at time of filing.
** Case schedule will be issued after hearing and findings.

☐ Change of Name (CHN 2)
(Petition for name change for reasons other than listed in RCW 4/24/130(5).)

☐ Confidential Change of Name (CHN 2)
(Petition for name change when domestic violence/anti-harassment issues require confidentiality under RCW 4/24/130(5).)

☐ Civil Commitment (sexual predator) (PCC 2)
(Petition to detain an individual involuntarily.)

☒ **Consumer Protection Act (CPA 2)***
**(Complaint involving unfair and deceptive acts or practices.)**

☐ Emancipation of Minor (EOM 2)
(Petition by a minor for a declaration of emancipation.)

☐ Employment (EMP 2)*
(Complaint regarding compliance with public employers sharing employee information with bargaining representatives.)

☐ Foreign Subpoena (OSS 2)
(To subpoena a King County resident or entity for an out of state case.)

☐ Frivolous Claim of Lien (FVL 2)
(Petition or Motion requesting a determination that a lien against a mechanic or materialman is excessive or unwarranted.)

☐ Injunction (INJ 2)*
(Complaint/petition to require a person to do or refrain from doing a particular thing.)

☐ Interpleader (IPL 2)
(Petition for the deposit of disputed earnest money from real estate, insurance proceeds, and/or other transaction(s).)

☐ Malicious Harassment (MHA 2)*
(Suit involving damages resulting from malicious harassment.) RCW 9a.36.080

☐ Minor Work Permit (MWP 2)
(Petition for a child under 14 years of age to be employed)

☐ Non-Financial Enforcement (NFE2)
(Filed by the PA or an agency responding to a demand for documents, pursuant to RCW 71.09)

☐ Non-Judicial Filing (NJF 2)
(See probate section for TEDRA agreements. To file for the record document(s) unrelated to any other proceeding and where there will be no judicial review.)

☐ Notice of Deposit of Surplus Funds (DSF 2)
(Deposit of extra money from a foreclosure after payment of expenses from sale and obligation secured by the deed of trust.)

☐ Other Complaint/Petition (MSC 2)*
(Filing a Complaint/Petition for a cause of action not listed)

☐ Perpetuation of Testimony (PPT 2)
(Action filed under CR 27)

☐ Petition to Remove Restricted Covenant (RRC 2)
Declaratory judgment action to strike discriminatory provision of real property contract.

* The filing party will be given an appropriate case schedule at time of filing.
** Case schedule will be issued after hearing and findings.

☐ Prorate Fuel Tax Subpoena (PFT 2)

(Subpoena-Actions filed under Chapt. 82.42 RCW for exparte orders for fuel tax collection violation investigation subpoenas.)

☐ Public records Act (PRA 2)*

(Action filed under RCW 42.56)

☐ Recall Ballot Synopsis (RBS2)

(Filed by the PA or AG pursuant to RCW 29A.56)

☐ Receivership (RCVR 2)

(The process of appointment by a court of a receiver to take custody of the property, business, rents and profits of a party to a lawsuit pending a final decision on disbursement or an agreement.)

☐ Relief from Duty to Register (RDR 2)

(Petition seeking to stop the requirement to register.)

☐ Restoration of Firearm Rights (RFR 2)

(Petition seeking restoration of firearms rights under RCW 9.41.040 and 9.41.047.)

☐ School District-Required Action Plan (SDR 2)

(Petition filed requesting court selection of a required action plan proposal relating to school academic performance.)

☐ Seizure of Property from the Commission of a Crime-Seattle (SPC 2)*
(Seizure of personal property which was employed in aiding, abetting, or commission of a crime, from a defendant after conviction.)

☐ Seizure of Property Resulting from a Crime-Seattle (SPR 2)*

(Seizure of tangible or intangible property which is the direct or indirect result of a crime, from a defendant following criminal conviction. (e.g., remuneration for, or contract interest in, a depiction or account of a crime.)

☐ Structured Settlements- Seattle (TSS 2)*

(A financial or insurance arrangement whereby a claimant agrees to resolve a personal injury tort claim by receiving periodic payments on an agreed schedule rather than as a lump sum.)

☐ Vehicle Ownership (PVO 2)*

(Petition to request a judgment awarding ownership of a vehicle.)

**TORT, ASBESTOS**

☐ Personal Injury (ASP 2)*

(Complaint alleging injury resulting from asbestos exposure.)

☐ Wrongful Death (ASW 2)*

(Complaint alleging death resulting from asbestos exposure.)

**TORT, MEDICAL MALPRACTICE**

☐ Hospital (MED 2)*

(Complaint involving injury or death resulting from a hospital.)

☐ Medical Doctor (MED 2)*

(Complaint involving injury or death resulting from a medical doctor.)

* The filing party will be given an appropriate case schedule at time of filing.
** Case schedule will be issued after hearing and findings.

☐ Other Health care Professional (MED 2)*

(Complaint involving injury or death resulting from a health care professional other than a medical doctor.)

**TORT, MOTOR VEHICLE**

☐ Death (TMV 2)*

(Complaint involving death resulting from an incident involving a motor vehicle.)

☐ Non-Death Injuries (TMV 2)*

(Complaint involving non-death injuries resulting from an incident involving a motor vehicle.)

☐ Property Damages Only (TMV 2)*

(Complaint involving only property damages resulting from an incident involving a motor vehicle.)

☐ Victims Vehicle Theft (VVT 2)*

(Complaint filed by a victim of car theft to recover damages.) RCW 9A.56.078

**TORT, NON-MOTOR VEHICLE**

☐ Other Malpractice (MAL 2)*

(Complaint involving injury resulting from other than professional medical treatment.)

☐ Personal Injury (PIN 2)*

(Complaint involving physical injury not resulting from professional medical treatment, and where a motor vehicle is not involved.)

☐ Products Liability (TTO 2)*

(Complaint involving injury resulting from a commercial product.)

☐ Property Damages (PRP 2)*

(Complaint involving damage to real or personal property excluding motor vehicles.)

☐ Property Damages-Gang (PRG 2)*

(Complaint to recover damages to property related to gang activity.)

☐ Tort, Other (TTO 2)*

(Any other petition not specified by other codes.)

☐ Wrongful Death (WDE 2)*

(Complaint involving death resulting from other than professional medical treatment.)

**WRIT**

☐ Habeas Corpus (WHC 2)

(Petition for a writ to bring a party before the court.)

☐ Mandamus (WRM 2)**

(Petition for writ commanding performance of a particular act or duty.)

☐ Review (WRV 2)**

(Petition for review of the record or decision of a case pending in the lower court; does not include lower court appeals or administrative law reviews.)

* The filing party will be given an appropriate case schedule at time of filing.
** Case schedule will be issued after hearing and findings.

# EXHIBIT 7

FILED
2026 MAY 14 02:04 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR THE COUNTY OF KING

**MATTHEW WILDMAN, on his own behalf and on behalf of others similarly situated**

*Plaintiff(s) / Petitioner(s)*

v.

Case No.: 26-2-15588-7 SEA

**COOKUNITY, INC.**

*Defendant(s) / Respondent(s)*

**AFFIDAVIT OF SERVICE**

I, Karen Wolcott, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to COOKUNITY, INC. in Thurston County, WA on May 13, 2026 at 11:35 am at 300 Deschutes Way SW, Ste 208, Tumwater, WA 98501-7719 by leaving the following documents with Ellen Jones who as INTAKE_SPECIALIST at CSC is authorized by appointment or by law to receive service of process for COOKUNITY, INC..

2026-05-11 - Case Information Cover Sheet.pdf
2026-05-11 - Order Setting Case Schedule - Civil.pdf
2026-05-11 - Demand for Jury - 12 Person.pdf
2026-05-11 - Pl's Case Assignment Area Designation & Case Information Cover Sheet (CICS).pdf
2026-05-11 - Summons.pdf
2026-05-11 - Consumer Protection Act Complaint.pdf
Race: White, Sex: Female, Est. Age: 65+, Hair: Black, Glasses: Y, Est. Weight: 100 lbs to 120 lbs, Est. Height: 5' to 5' 3".
Geolocation of Serve: https://google.com/maps?q=47.0131481,-122.9058381

Photograph: See Exhibit 1

Total Cost: $131.50

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FACTS HEREIN ARE TRUE AND CORRECT.

Executed in
Thurston County
,
WA on 5/14/2026.

/s/ Karen Wolcott
Signature
Karen Wolcott
+1 (360) 448-1014
25-0114-02
Thurston County


Exhibit 1a)
208
ACCUFACTS
Research Corp
-
Corporation Service
Company
Galaxy S23

# EXHIBIT 8

HONORABLE MICHAEL K. RYAN

FILED
2026 JUN 02 09:56 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15588-7 SEA

SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

MATTHEW WILDMAN, on his behalf and on behalf of others similarly situated,

Plaintiff,

vs.

COOKUNITY, INC.,

Defendant.

NO. 26-2-15588-7 SEA

**NOTICE OF APPEARANCE**

**(CLERK'S ACTION REQUIRED)**

TO: Clerk of the Court;

AND TO: Plaintiff Matthew Wildman;

AND TO: Plaintiff's Counsel

PLEASE TAKE NOTICE that William H. Walsh and Patrick Clifford of Cozen O'Connor hereby appears on behalf of Defendant CookUnity, Inc. ("Defendant") without waiving objections as to lack of subject matter jurisdiction; lack of personal jurisdiction; improper venue; insufficiency of service of process; insufficiency of process; failure to state a claim upon which relief can be granted, or any other claim or defense hereby enter their appearance through the undersigned attorneys.

Service of all further pleadings, notices, documents or other papers in this matter, exclusive of original process, may be had upon said Defendant by serving the undersigned attorneys of record



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 1900
999 THIRD AVENUE
SEATTLE, WASHINGTON 98104
(206) 340-1000

at the address stated below.

DATED this 2nd day of June, 2026.

COZEN O'CONNOR

By: */s/ William H. Walsh*
William H. Walsh, WSBA #21911
Patrick Clifford, WSBA #56848
999 Third Avenue Suite 1900
Seattle, WA 98104
Telephone: (206) 340-1000
Email: wwalsh@cozen.com
pclifford@cozen.com

*Attorneys for Defendant*



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 1900
999 THIRD AVENUE
SEATTLE, WASHINGTON 98104
(206) 340-1000

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies, under penalty of perjury the laws of the State of Washington, that on the date below, I electronically filed the foregoing document via the King County Clerk's e-filing system, and also caused the following individual(s) to be served in the manner indicated below:

Samuel J. Strauss, WSBANo. #46971
Raina C. Borrelli (*pro hac vice* forthcoming)
Strauss Borrelli PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops (*pro hac vice* forthcoming)
Natalie A. Lyons (*pro hac vice* forthcoming)
Ian R. Bensberg (*pro hac vice* forthcoming)
Cohenmalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV (*pro hac vice* forthcoming)
Michael C. Tackeff (*pro hac vice* forthcoming)
Andrew K. Murray (*pro hac vice* forthcoming)
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff and the Putative Class*

☐ Via Messenger
☐ Via Fax
☐ Via U.S. Mail
☒ Via ECF Notification
☒ Via E-mail
☐ Via Overnight Delivery

DATED this 12th day of June, 2026.

COZEN O'CONNOR

By *<u>/s/ Marison Zafra</u>*
Marison Zafra, Legal Practice Assistant
Email: mzafra@cozen.com

# EXHIBIT 9

HON. NELSON LEE, DEPT. 19

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| MATTHEW WILDMAN, on his behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COOKUNITY, INC.,<br><br>Defendant. | **No. 26-2-15588-7 SEA**<br><br>**NOTICE OF FILING NOTICE OF REMOVAL**<br><br>[CLERK'S ACTION REQUIRED] |

Please take note that Defendant CookUnity, Inc., has filed a Notice of Removal of this action with the United States District Court for the Western District of Washington at Seattle, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, containing a statement of facts to show that this matter may be removed. A copy of the Notice of Removal is attached as **Exhibit 1**.

You are also advised that Defendant has filed a copy of this Notice, together with a copy of the Notice of Removal, with the Clerk of the King County Superior Court, State of Washington, pursuant to 28 U.S.C. §1446(d).



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
SUITE 1900
999 THIRD AVENUE
SEATTLE, WASHINGTON 98104
(206) 340-1000

DATED this 12th day of June, 2026.

COZEN O'CONNOR

By: */s/ William H. Walsh*

William H. Walsh, WSBA #21911
Patrick Clifford, WSBA #56848
999 Third Avenue Suite 1900
Seattle, WA 98104
Telephone: (206) 340-1000
Email: wwalsh@cozen.com
pclifford@cozen.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury the laws of the State of Washington, that on the date below, I electronically filed the foregoing document via the King County Clerk's e-filing system, and also caused the following individual(s) to be served in the manner indicated below:

Samuel J. Strauss, WSBA #46971
Raina C. Borrelli (*pro hac vice* forthcoming)
Strauss Borrelli PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

☐ Via Messenger
☐ Via Fax
☐ Via U.S. Mail
☒ Via ECF Notification
☒ Via E-mail
☐ Via Overnight Delivery

Lynn A. Toops (*pro hac vice* forthcoming)
Natalie A. Lyons (*pro hac vice* forthcoming)
Ian R. Bensberg (*pro hac vice* forthcoming)
Cohenmalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV (*pro hac vice* forthcoming)
Michael C. Tackeff (*pro hac vice* forthcoming)
Andrew K. Murray (*pro hac vice* forthcoming)
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff and the Putative Class*

DATED this 12th day of June, 2026.

COZEN O'CONNOR

By */s/ Marison Zafra*
Marison Zafra, Legal Practice Assistant
Email: mzafra@cozen.com